**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

LORI HESS, DAVID GUPTA, MARIKAY       )
BELSANTI, MARVIN AAL, DAVID           )
NELSON, ABBY STARR, WILLIAM           )
ZANETIS, VIVIAN SAN JUAN, and         )
SCOTT PALMER,                         )
                 Plaintiffs,       )
                         )
                v.                  )      No. 11 C 1310
                         )
TRAVELERS CASUALTY AND SURETY         )
COMPANY OF AMERICA,                   )
                         )
               Defendant.         )

**MEMORANDUM OPINION**

Before the court are the parties' cross-motions for summary judgment.  For the reasons explained below, we grant the defendant's motion and deny the plaintiffs' motion.

**BACKGROUND**

The plaintiffs in this insurance coverage dispute are members of the board of directors of the Dearborn Elm Condominium Association (the "Association").  The Association is covered by a "Non-Profit Management and Organization Liability Insurance Policy" (the "Policy") issued by defendant Travelers Casualty and Surety Company of America ("Travelers").  (Def.'s L.R. 56.1 Stmt. (hereinafter, "Def.'s Stmt.") ¶ 6; see also Policy, attached as Ex.

4 to Def.'s Stmt.)[1]  In 2007, the Association filed a lawsuit alleging that the condominium building had numerous construction defects, including improperly pitched balconies and terraces resulting in water damage.  (Id. at ¶¶ 10, 18; see also Second Am. Compl., The Dearborn-Elm Condominium Association v. JDL Development IX, LLC, et al., No. 07 L 8739 (Ill. Cir. Ct. 2007) (the "Dearborn-Elm Lawsuit"), attached as Ex. 9 to Def.'s Stmt., ¶¶ 27-47 (balcony and terrace defects), ¶¶ 48-52 (additional defects).)[2] Among other defendants, the Association sued (1) JDL Development IX, LLC ("JDL Development"), the building's developer; and (2) James Letchinger, Stephanie Letchinger, and Donald Letchinger, the Association's developer-appointed board members before control was turned over to elected unit owners.  (See Def.'s Stmt. ¶¶ 14, 16; see also Dearborn-Elm Lawsuit, Second Am. Compl., ¶¶ 23-26.)  The Association alleges that the Letchingers breached their fiduciary duties to the Association by (1) "allowing the aforementioned defects and problems to occur, failing to take action, and failing to make the necessary repairs, remediation, or replacements;" and

---

[1]  The plaintiffs have not responded to Travelers's Local Rule 56.1 statement. Therefore, we deem Travelers's statements of fact admitted. See N.D. Ill. L.R. 56.1(b)(3)(C). However, the plaintiffs' default has little impact on the outcome of this lawsuit as it is apparent that the parties genuinely agree about the relevant facts.  (See Def.'s Resp. to Pls.' L.R. 56.1 Stmt. (admitting without qualification all but one of the plaintiffs' statements of fact).)

[2]  We follow Travelers's lead in citing the second amended complaint, (see Def.'s Stmt. ¶¶ 14-19), which was the operative complaint when the "JDL Lawsuit" was filed (see infra). The Association later amended its complaint a third time to allege additional defects relating to the balcony and terrace doors and windows.  (See Dearborn-Elm Lawsuit, Third Am. Compl., attached as Ex. 10 to Def.'s Stmt., ¶¶ 54-62.)

(2) failing to "properly establish a reserve fund to address the necessary costs incurred and to be incurred in repairing the aforementioned defects and problems." (Dearborn-Elm Lawsuit, Second Am. Compl., ¶¶ 73, 75-76.)

JDL Development and 1035 North Dearborn, LLC — alleged condominium unit owners — have filed a separate lawsuit against the individual members of the Association (i.e., the plaintiffs in *this* lawsuit) for breach of fiduciary duty. (See Compl., <u>JDL Development et al. v. Hess et al.</u>, No. 10 L 6152 (Cir. Ct. Cook County) (the "JDL Lawsuit"), attached as Ex. 11 to the Def.'s Stmt.) The JDL Lawsuit is expressly based upon the Association's claim against the Letchingers in the Dearborn-Elm Lawsuit:

> Between July 2003 [when elected unit owners assumed control of the Association from the Letchingers] and May 2007 [when the board commissioned a firm to investigate the alleged construction defects], if the Letchingers are deemed to have breached their fiduciary duties, Defendants breached their fiduciary duties to Plaintiffs for the same reasons by: (i) allowing the defects alleged by the Association to occur and continue; (ii) failing to take action; (iii) failing to make the necessary repairs, remediation, or replacements; and (iv) failing to establish a proper reserve fund to address the costs incurred and to be incurred by Plaintiffs for repairing the defects alleged by the Association.

(<u>Id.</u> at ¶ 43; <u>see also</u> <u>id.</u> at ¶ 40 ("If the Letchingers are liable for breaching their fiduciary duties as alleged by the Association, Defendants are also liable to the Plaintiffs for breach of fiduciary duty.").  When the defendants in the JDL Lawsuit tendered their defense, Travelers refused, precipitating this lawsuit. (<u>See</u>

Def.'s Stmt. ¶¶ 23, 35, 38.) The plaintiffs have filed a two-count complaint seeking: (1) a declaratory judgment that Travelers has a duty to defend and indemnify the plaintiffs in connection with the JDL Lawsuit (Count I), and (2) damages for breach of the Policy (Count II). Travelers has filed a counterclaim seeking a declaratory judgment that it is not obligated to defend or indemnify the plaintiffs. The parties agree that there are no material disputes of fact and they have filed cross-motions for summary judgment.

## DISCUSSION

### A.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby,

<u>Inc.</u>, 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." <u>McGrath v. Gillis</u>, 44 F.3d 567, 569 (7th Cir. 1995).

## B.   The Duty to Defend

An insurer must defend its insured if the underlying complaint alleges facts "within or *potentially* within policy coverage . . . even if the allegations are groundless, false, or fraudulent." <u>U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.</u>, 578 N.E.2d 926, 930 (Ill. 1991) (emphasis in original); <u>see also</u> <u>id.</u> ("An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.") (emphasis in original). "The legal labels used by a plaintiff in the underlying case are not dispositive as to whether a duty to defend exists." <u>Connecticut Indem. Co. v. DER Travel Service, Inc.</u>, 328 F.3d 347, 349 (7th Cir. 2003) (citing <u>Lexmark Int'l, Inc. v. Transp. Ins. Co.</u>, 761 N.E.2d 1214, 1221 (2001)).

The central question posed by both parties in their cross-motions for summary judgment is whether the following coverage exclusion applies:

> The Insurer shall not be liable to make any payment for
> Loss in connection with any Claim made against any of the

> Insureds . . . . for or arising out of any damage,
> destruction, loss of use or deterioration of any tangible
> property including without limitation, construction
> defects, whether or not as a result of faulty or
> incorrect design or architectural plans, improper soil
> testing, inadequate or insufficient protection from soil
> and/or ground water movement, soil subsidence, mold,
> toxic mold, spores, mildew, fungus, or wet or dry rot, or
> the supervision of actual construction, manufacturing or
> assembly of any tangible property[.]

(See Policy, § IV ("Exclusions") and Amended BI/PD Exclusion.) The

plaintiffs argue that the breach of fiduciary duty claim in the JDL

Lawsuit "relates to" construction defects, but does not "arise out

of" such defects. (Pls.' Mem. at 7.) However, they have not cited

any cases supporting their interpretation, nor have they attempted

to define "arising out of." They appear to argue that the

exclusion applies only if an insured directly causes property

damage. (See Pls.' Mem. at 7 ("[The JDL Lawsuit] does NOT allege

that the Plaintiffs are responsible for the property damage nor

that Plaintiffs should pay for the property damage . . . .")

(emphasis in original).) Travelers, relying primarily on cases

construing Florida law, argues that "arising out of" means

"originating from," "having its origin in," "growing out of,"

"flowing from," "incident to or having connection with." Taurus

Holdings, Inc. v. U.S. Fidelity and Guar. Co., 913 So.2d 528,

535-36 (Fla. 2005) (surveying the law in Florida and other

jurisdictions and concluding that these definitions represent the

majority view); see also Eastpointe Condominium I Ass'n, Inc. v.

Travelers Cas. and Sur. Co. of America, 664 F.Supp.2d 1281, 1288

(S.D. Fla. 2009) (applying Florida law). These cases hold that the term requires "some causal connection," but that "but for" causation will suffice. <u>Taurus Holdings</u>, 913 So.2d at 539-40. The plaintiff in <u>Eastpointe</u> sued a condominium association for failing "to properly maintain, repair and replace the roof and air conditioning unit of the subject condominium building," causing property damage. <u>Eastpointe</u>, 664 F.Supp.2d at 1287. The plaintiff alleged several legal theories, including breach of fiduciary duty. <u>Id.</u> at 1284. The <u>Eastpointe</u> court construed the same policy exclusion at issue in this case to preclude coverage:

> The policy at issue here expressly excludes coverage for claims "for or arising out of any damage, destruction, loss of use or deterioration of any tangible property." The Bursten complaint alleges mold damage, contents damage and loss of use of Bursten's unit as a result of water infiltration caused by Hurricanes Frances and Jeanne. This claim plainly has its origin in, grows out of, flows from or originates from damage to tangible property. But for the alleged water intrusion and damage to the building skin, there would be no Bursten claim for mold, structural damage and loss of use of the Bursten unit. This meets the definition of simple "but for" causation.

<u>Id.</u> at 1288 (<i>affirmed by</i> <u>Eastpointe Condominium I Ass'n, Inc. v. Travelers Cas. & Sur. Co. of America</u>, 379 Fed.Appx. 906, 908 (11th Cir. 2010) ("Eastpointe's putative breach of fiduciary duty plainly 'ha[d] a connection with' the property damage alleged in Bursten's complaint.") (quoting <u>Taurus Holdings</u>, 913 So.2d at 539)). Travelers's argues that the same reasoning supports finding that it has no duty to defend the plaintiffs: but for the construction

defects alleged in the Dearborn-Elm Lawsuit, there would be no claim for breach-of-fiduciary duty in the JDL Lawsuit.

The plaintiffs argue that Illinois courts have not construed "arising out of" as broadly as the Florida cases that Travelers cites, relying on <u>United Services Automobile Ass'n v. Dare</u>, 830 N.E.2d 670 (Ill. Ct. App. 2005). In <u>United Services</u>, an individual purchased a horse trailer from the insured, Dare. <u>Id.</u> at 672. Before the sale, Dare retrofitted the trailer with a chain intended to secure the horse in the trailer. <u>Id.</u> at 956-57. The purchaser alleged in the underlying action that the chain was defective, permitting the horse to escape the trailer and injuring the purchaser in the process. <u>Id.</u> The insurer relied on the following exclusion in declining to defend Dare:

> Medical Payments to Others do not apply to bodily injury or property damage:
>
> [. . . .]
>
> e. arising out of:
>
> (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or loaned to an Insured.

<u>Id.</u> The <u>United Services</u> court concluded that the exclusion was inapplicable to the purchaser's claims alleging products liability (improper chain design and failure to warn). <u>Id.</u> at 678-79; <u>see also</u> <u>id.</u> ("The duty to defend applies to cases where the complaint alleges several causes of action or theories of recovery against an

insured even if only one or some of them are within the policy coverage.") (citation and internal quotation marks omitted). It then went on to reject the insurer's argument that the exclusion applied because the purchaser would not have been injured but for the fact that Dare had "owned" the trailer. Id. at 968-971. In doing so, the court distinguished Maryland Casualty Co. v. Chicago & North Western Transportation Co., 466 N.E.2d 1091, 1094 (Ill. App. Ct. 1984), which had held that "arising out of" encompassed "but for" causation. First, Maryland Casualty interpreted the phrase "arising out of" in a coverage provision, not an exclusion, which supported a broader interpretation in the insured's favor. See United Services, 830 N.E.2d at 682-83. Second, unlike Maryland Casualty, it was not clear whether the "ownership" exclusion in Dare's policy applied because the accident occurred after Dare had sold the trailer. Id. at 683-84. Because the court concluded that "ownership" was ambiguous, it adopted an interpretation that favored the insured. Id. at 684.

We think that the tension between United Services and the cases that Travelers cites is more apparent than real. As a threshold matter, we conclude that the phrase "arising out of" is not ambiguous. See Oakley Transport, Inc. v. Zurich Ins. Co., 648 N.E.2d 1099, 1103-04 (Ill. App. Ct. 2005) (concluding that the phrase is not ambiguous). So, we must construe the phrase according to its "plain and ordinary meaning." Grinnell Mut. Reinsurance Co. v. Haight, 697 F.3d 582, 585-86 (7th Cir. 2012)

("As with any contract, we construe an insurance policy according to the plain and ordinary meaning of its unambiguous terms.") (applying Illinois law). "Arise" means "to originate from a source." Merriam-Webster Dictionary Online, available at http://www.merriam-webster.com (last visited Feb. 14, 2013). As the United Services court pointed out, Maryland Casualty dealt with a coverage provision, not a policy exclusion. Nevertheless, it hewed closely to the phrase's plain meaning: "'[a]rising out of' has been held to mean 'originating from,' 'having its origin in,' 'growing out of' and 'flowing from.'" Maryland Casualty, 466 N.E.2d at 1094 (quoting Western Cas. and Sur. Co. v. Branon, 463 F.Supp. 1208, 1210 (E.D. Ill. 1979)). This is consistent with the definition adopted in the Florida cases that Travelers cites. See, e.g., Taurus Holdings, 913 So.2d at 535-36. And unlike the policy language in United Services, the terms "tangible property" and "construction defects" are not ambiguous. The thrust of the plaintiffs' claim in the JDL Lawsuit is that the defendants failed to detect and correct construction defects in a timely fashion, causing damage to "tangible property" that the unit owners must pay for. (See Compl., JDL Lawsuit, ¶ 44 ("All expenses incurred by the Association in repairing the common elements have been or will be assessed against Plaintiffs in proportion to their ownership interest in the common elements.").) It is unnecessary to decide whether the term "arising out of" in a policy exclusion encompasses

claims that are truly remote from property damage, because that is not our case. (<u>Cf.</u> Pls.' Resp. at 4-5 (positing a parade of horribles if "arising out of" means "but for" causation).) The plaintiffs' breach of fiduciary duty claim in the JDL Lawsuit clearly "originates" from the construction defects alleged in the Dearborn-Elm Lawsuit. Conversely, there is no support in the Policy's language for the plaintiffs' argument that the exclusion is limited to claims for construction defects directly caused by an insured.

The plaintiffs' remaining arguments are also meritless. First, the plaintiffs argue that the JDL Lawsuit is "potentially" within the Policy's coverage because no Illinois court has applied this particular policy exclusion to a claim for breach of fiduciary duty. As we just discussed, general principles of contract interpretation, applicable to insurance contracts under Illinois law, support the defendants' position that the exclusion applies to the JDL Lawsuit. <u>See</u> <u>Grinnell Mut.</u>, 697 F.3d at 585-86. It is also supported by persuasive authority from other jurisdictions dealing with the very policy exclusion at issue here. <u>See, e.g.</u>, <u>Eastpointe</u>, 379 Fed. Appx. at 908 ("[W]e are not persuaded by Eastpointe's attempt to differentiate between losses originating from property damage, and losses originating from breaches of fiduciary duty that ultimately result in property damage."); <u>see also</u> <u>Connecticut Indem. Co.</u>, 328 F.3d at 349 ("legal labels" are

not dispositive). Second, the plaintiffs argue that particular allegations in the JDL Lawsuit are broad and/or vague enough to trigger coverage. Specifically, the plaintiffs argue that (1) the allegation that the plaintiffs "fail[ed] to take action" could encompass omissions not involving damage to tangible property; and (2) the allegation that they inadequately funded the Association's reserves could encompass obligations unrelated to such damage, such as the Association's duty to pay real estate taxes. (See Pls.' Mem. at 5-6.) Both of these arguments are based upon hypothetical claims, not on the actual allegations in the JDL Lawsuit. See Lagestee-Mulder, Inc. v. Consolidated Ins. Co., 682 F.3d 1054, 1059 (7th Cir. 2012) ("[I]t is the actual complaint, and not a hypothetical version that must be considered when determining whether an insurer's duty to defend was triggered."). The phrase "failing to take action" is a direct quote from the complaint in the Dearborn-Elm Litigation. (See Compl., JDL Litigation, ¶¶ 28, 43; Second Am. Compl., Dearborn-Elm Litigation, ¶ 73.) There is no allegation in either complaint that the defendants failed to take an "action" unrelated to the construction defects that the Association has alleged. (See, e.g., Second Am. Compl., Dearborn-Elm Litigation, ¶ 74 (alleging in the next paragraph that, because the Letchingers breached their fiduciary duty, "[the Association] is now required to take action to correct such defects and problems").) Similarly, the plaintiffs in the JDL Lawsuit

explicitly tie the reserve-fund issue to the complaint's core allegations about the building's construction defects: the defendants breached their fiduciary duties by "failing to establish a proper reserve fund to address the costs incurred and to be incurred by Plaintiffs for repairing the defects alleged by the Association." (Compl., JDL Lawsuit, ¶ 43.)

In sum, we conclude that Travelers is entitled to a declaratory judgment that it has no duty to defend the plaintiffs in the JDL Lawsuit. Travelers is also entitled to summary judgment on the plaintiffs' breach-of-contract claim, which is based upon Travelers's allegedly wrongful refusal to defend. (<u>See</u> Am. Compl. ¶ 39.)

**B.    Duty to Indemnify**

Although the parties seek summary judgment on all claims in the case, neither side expressly addresses indemnification in its motion for summary judgment. (<u>Cf.</u> Am. Compl. at 7 (seeking a declaratory judgment that Travelers has a duty to indemnify the plaintiffs); Def.'s Answer & Counterclaim at 19 (seeking a declaratory judgment that it does not have a duty to indemnify the plaintiffs).) The general rule is that it is premature to enter a declaratory judgment regarding indemnification before a judgment in the underlying lawsuit. <u>See, e.g.</u>, <u>Medical Assur. Co., Inc. v. Hellman</u>, 610 F.3d 371, 375 (7th Cir. 2010) (a claim for declaratory relief regarding indemnification is not ripe "until liability has

been established").[3]  "A declaration that A must indemnify B if X comes to pass has an advisory quality; and if the decision would not strictly be an advisory opinion (anathema under Article III) it could be a mistake, because it would consume judicial time in order to produce a decision that may turn out to be irrelevant."  Lear Corp. v. Johnson Electric Holdings Ltd., 353 F.3d 580, 583 (7th Cir. 2003).  However, "a court that has devoted considerable effort to determining the scope of a defense obligation to resolve the parties' immediate dispute may find it prudent to specify the scope of an indemnity duty at the same time if that subject also is in debate."  Id.  The district court in Lear concluded that the defendant did not have a duty to defend based upon language in the relevant contract permitting the indemnitor to defend the indemnitee at its election.  See Lear Corp. v. Johnson Elec. Holdings Ltd., No. 02 C 6704, 2003 WL 21254253, *8 (N.D. Ill. May 30, 2003).  So, the court had no occasion to construe the contract's indemnification provision as applied to the underlying lawsuit.  See Lear, 353 F.3d at 583 ("[T]he judge found that Johnson Electric did not have any duty to defend Lear in the Mississippi litigation, which made it less attractive to try to wade into the parties' debate about indemnity — and impossible for an appellate court to say that the district judge abused her

discretion by steering clear for now."). In this case, unlike
<u>Lear</u>, the duty-to-defend question hinges on the Policy's
substantive coverage/exclusion provisions. Our analysis of that
issue forecloses any claim for indemnification. <u>See</u> <u>Crum and
Forster Managers Corp. v. Resolution Trust Corp.</u>, 620 N.E.2d 1073,
1081 (Ill. 1993) ("In cases such as the instant case where no duty
to defend exists and the facts alleged do not even fall potentially
within the insurance coverage, such facts alleged could obviously
never actually fall within the scope of coverage. Under no
scenario could a duty to indemnify arise."). Recently, our Court
of Appeals affirmed a declaratory judgment that an insurer did not
owe a duty to indemnify under similar circumstances. <u>See
Nationwide Ins. Co. v. Central Laborers' Pension Fund</u>, — F.3d —,
2013 WL 135726, *4 (7th Cir. Jan. 11, 2013) (slip op.). The
<u>Nationwide</u> Court concluded that the underlying lawsuit did not
trigger the insurer's duty to defend, therefore it had no duty to
indemnify. <u>Id.</u> (citing <u>Crum</u>, 620 N.E.2d at 1081). It then
affirmed the district court's declaratory judgment that the insurer
was not obligated to indemnify its insured, even though no judgment
had been entered in the underlying suit. <u>Id.</u> (because the insurer
had no duty to defend the insured in the underlying lawsuit, it
also had no duty to indemnify "should that state action go against
her"). The circumstances of this case are essentially similar. We
have devoted "considerable effort" to deciding the duty-to-defend

question, <u>Lear</u>, 353 F.3d at 583, and our conclusion precludes a claim for indemnification should the plaintiffs be found liable in the JDL Lawsuit.  <u>See</u> <u>Nationwide</u>, 2013 WL 135762, *4.  So, we will also enter a declaratory judgment that Travelers is not obligated to indemnify the plaintiffs for losses in connection with the JDL Lawsuit.

## CONCLUSION

The plaintiffs' motion for summary judgment [33] is denied. The defendant's motion for summary judgment [29] is granted.


DATE:          February 20, 2012


ENTER:
_____
John F. Grady, United States District Judge